IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY DAOUST | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 6018 |
| | ) | |
| ABBOTT LABORATORIES, | ) | |
| | ) | |
| Defendant. | ) | |

PRELIMINARY DETERMINATION ON LEGAL ISSUE OF
CLEARLY MANDATED PUBLIC POLICY IN ILLINOIS

JAMES F. HOLDERMAN, Chief Judge:

This case involves a one-count Complaint alleging that defendant Abbott Laboratories

("Abbott Labs") violated state common law when it discharged plaintiff Jeffrey Daoust "in

response to his complaints of being subjected to physically threatening behavior by a subordinate

employee." (Compl. ¶ 20). The court derives its subject matter jurisdiction from 28 U.S.C. §

1332. In order to establish a claim for retaliatory discharge under Illinois law, plaintiff Jeffrey

Daoust ("Daoust") must demonstrate (1) that he was discharged; (2) in retaliation for his

activities; and (3) that this discharge violates a clearly mandated public policy. *Geary v. Telular

Corp.*, 793 N.E.2d 128, 133-34 (Ill. App. Ct. 2003).

At this point in the proceedings, with the final pretrial order approved and entered by the

court and trial scheduled to begin in less than eight weeks, the parties have both represented to

the court that they believe the third prong of Daoust's retaliatory discharge claim is a question of

law to be decided by the court. (Dkt. No. 87 at 1; Dkt. No. 97 ¶ 3). The question of whether

Daoust's discharge violated a clearly mandated public policy would be a pure question of law if the parties agreed to the circumstances surrounding Daoust's discharge. *See Newby v. Wal-Mart Stores, Inc.*, 659 F. Supp. 879, 880-81 (C.D. Ill. 1987) (violation of clearly mandated public policy an issue "for a court to decide" where parties agreed that plaintiff was discharged due to his multiple wage garnishments). In this case, however, the parties dispute whether Daoust was terminated for his physical response to a "heated argument" with co-worker Tom Stollings ("Stollings"), or for reporting the incident. (Def.'s Trial Br., Pretrial Order at 66.) Of note, the parties have *not* stipulated that Stollings' behavior was actually "physically threatening" (Pl.'s Trial Br., Pretrial Order at 43) or that Daoust believed Stollings' behavior was threatening (Def.'s Trial Br., Pretrial Order at 73). Accordingly, the court can only determine as a matter of law whether a clearly mandated Illinois public policy would be implicated if a trier of fact believed Daoust's version of the events.

Because the existence of a clearly mandated public policy is a question of law, the court may resolve this question in advance of the scheduled jury trial. *See McKinney v. Duplain*, 463 F.3d 679, 689 (7th Cir. 2006) (noting that a question of law "does not depend on the outcome of a disputed factual question"). The parties have each addressed this question in the trial briefs previously submitted to the court as part of the final pretrial order. In analyzing the arguments set forth by the parties, the court has made a  preliminary determination that a clearly mandated public policy exists under Illinois law that prohibits retaliatory discharge of employees who report incidents of workplace violence. The parties are granted leave to file further briefings in response to this preliminary ruling, should they desire to do so.

LEGAL STANDARD

Illinois follows the common law doctrine that an employer can generally terminate an at-will employee for any reason or no reason at all. *McGrath v. CCC Info. Serv., Inc.*, 731 N.E.2d 384, 388 (Ill. App. Ct. 2000). Through the tort of retaliatory discharge, Illinois courts have created a narrow exception to this rule if an employee's discharge violates a clearly mandated public policy. *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981). Recognizing the level of imprecision necessarily involved in attempting to distinguish a "clearly mandated public policy" for purposes of retaliatory discharge, the Illinois Supreme Court has determined that "it is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Id.*; *see also Geary*, 793 N.E.2d at 134 ("There is no precise definition of what constitutes a clearly mandated public policy."). On the other hand, "[i]t is not necessary for a plaintiff attempting to state a claim for retaliatory discharge to cite to a statute making his or her firing illegal. If that were the case, the tort of retaliatory discharge would be superfluous, for the plaintiff would be able to proceed under the statute." *Stebbings v. Univ. of Chicago*, 726 N.E.2d 1136, 1141 (Ill. App. Ct. 2000). Over time, Illinois courts have consistently cautioned against the unwarranted expansion of this common law tort into areas that are better categorized as private and individual grievances. *Geary*, 793 N.E.2d at 134. Viewing the facts in the light most favorable to the plaintiff, the court must determine whether Illinois has a clearly mandated public policy against discharging an employee for reporting "physically threatening behavior." (Pl.'s Trial Br., Pretrial Order at 43). As described above, it will be up to the jury to determine whether this characterization of the incident is correct.


ILLINOIS CONSTITUTION

Turning first to the Illinois Constitution, as it is obligated to do, the court notes that the language employed by the Illinois Constitution demonstrates an overall concern for the safety and well-being of Illinois citizens. The Preamble acknowledges the formation of a system of government "in order to provide for the health, safety and welfare of the people." Ill. Const. 1970, Preamble; *see also Palmateer*, 421 N.E.2d at 879-80 (citing the Preamble to the Illinois Constitution in support of the proposition that "There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens."). This aim is reiterated in reference to Illinois' local governments, as home rule powers include the power to regulate "for the protection of the public health, safety, morals and welfare." Ill. Const. art. VII, § 6(a). Additionally, the Illinois Bill of Rights demonstrates a concern for the physical safety of both individuals and the general public in Section 3 (Religious Freedom) and Section 9 (Bail and Habeas Corpus). Ill. Const. art. I, §§ 3, 9.

## ILLINOIS STATUTES

While the Illinois Constitution evidences a general concern for the safety of Illinois citizens, a number of Illinois statutes have been enacted to address specific concerns regarding violence in the workplace.

Most recently, in 2005, the Illinois legislature enacted the Health Care Workplace Violence Prevention Act. 405 Ill. Comp. Stat. 90/1, *et seq.* The General Assembly specifically included a finding that "[t]he actual incidence of workplace violence in health care workplaces, in particular, is likely to be greater than documented *because of failure to report such incidents*." 405 Ill. Comp. Stat. 90/5(2) (emphasis added). In relevant part, the Health Care Workplace Violence Prevention Act includes a requirement that health care workplaces develop a plan to

address the reporting of violent acts in the workplace. 405 Ill. Comp. Stat. 90/15(a)(5). In accordance with its plan, each health care workplace must provide ongoing violence prevention training in "documenting and reporting incidents of violence." 405 Ill. Comp. Stat. 90/20(10).

In 2003, the Illinois legislature enacted the Victims' Economic Security and Safety Act, finding "the prevalence of domestic violence, dating violence, sexual assault, stalking, and other violence against women *at work* is dramatic." 820 Ill. Comp. Stat. 180/5(11) (emphasis added). The Victims' Economic Security and Safety Act makes it unlawful "for any employer to discharge or harass any individual, or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment of the individual (including retaliation in any form or manner)" because the individual exercised his or her right to a leave of absence due to domestic or sexual violence. 820 Ill. Comp. Stat. 180/20(f)(1)(B).

In 2001, the Illinois legislature mandated the creation of a model policy regarding domestic violence and sexual assault awareness in the workplace. 20 Ill. Comp. Stat. 605/605-550. The purpose of the model policy was "to provide businesses with the best practices, policies, protocols, and procedures in order that they ascertain domestic violence and sexual assault awareness in the workplace, assist affected employees, and provide a safe and helpful working environment for employees currently or potentially experiencing the effects of domestic violence or sexual assault." 20 Ill. Comp. Stat. 605/605-550(b); *see also* Sandra S. Park, *Working Towards Freedom from Abuse: Recognizing a "Public Policy" Exception to Employment-at-Will for Domestic Violence Victims*, 59 N.Y.U. Ann. Surv. Am. L. 121, 125 (2003) (noting that Illinois' statutory approach helps ensure "employees would be able to approach their employers for support without fear of discrimination").

Together, these statutes demonstrate that Illinois' overall concern for the safety of its citizens extends into the workplace. The Illinois General Assembly has enacted laws that combat under-reported workplace violence and that attempt to protect victims of violence from experiencing discrimination in the workplace. Furthermore, in a retaliatory discharge situation, the reported behavior need not violate any specific statute in order for a court to determine that Illinois public policy has been implicated. *See Stebbings*, 726 N.E.2d at 1143 ("This policy is not limited to the particular people who work in the environments regulated by the laws.").

ILLINOIS CASE LAW

Finally, although not required to do so, the court turns to Illinois case law as a source of public policy. *See Palmateer*, 421 N.E.2d at 878. Here again, the court finds evidence of a clearly mandated public policy against terminating an employee for reporting an incident of workplace violence. As one court succinctly stated, "Illinois courts have consistently held that policies affecting the health and safety of citizens will support a retaliatory discharge claim." *Leweling v. Schnadig Corp.*, 657 N.E.2d 1107, 1109-10 (Ill. App. Ct. 1995). Examples of Illinois holdings distinguishing public policy along the lines of health and safety measures for purposes of retaliatory discharge claims include: *Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 377 (Ill. 1985) (finding "the protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence"); *Palmateer*, 421 N.E.2d at 879 (noting "there is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens")*; Chicago Commons Assoc. v. Darrell Hancock*, 804 N.E.2d 703, 707 (Ill. App. Ct. 2004) (declining to extend retaliatory discharge tort where allegedly protected activity was

"nothing more than an economic right"); *Greary*, 793 N.E.2d at 133 (citing *McGrath* for the proposition that economic activities do not "'strike at the heart' of plaintiff's social rights, duties, and responsibilities"); *McGrath*, 731 N.E.2d at 391 ("Public policies associated with social and economic regulation are less likely to be held sufficient to support claims of retaliatory discharge."); *Stebbings*, 726 N.E.2d at 1143 (Ill. App. Ct. 2000) (applying *Wheeler*'s precedent and holding "it is as contrary to public policy to fire an employee for reporting radiation hazards as it is to fire an employee for reporting a crime"); *Sherman v. Kraft Gen. Foods, Inc.*, 651 N.E.2d 708, 713 (Ill. App. Ct. 19945) (finding public policy of protecting lives and property of citizens applies where employee terminated for reporting occupational health hazards); *Leweling*, 657 N.E.2d at 1112 (finding no public policy because the economic regulation reportedly violated does not "give rise to a social duty or responsibility, or promote the health and welfare of the citizenry."); *Balla v. Gambro, Inc.*, 584 N.E.2d 104, 107-08 (Ill. 1991) (noting that discharge because employee insisted on compliance with FDA regulations regarding kidney dialyzers would violate Illinois' clearly mandated public policy of protecting the lives and property of its citizens, were it not for fact that plaintiff was also general counsel for employer).

<u>ANALYSIS</u>

As the Illinois Supreme Court stated in *Palmateer*, "In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively." *Palmateer*, 421 N.E.2d at 878. As evidenced by the constitutional, statutory, and case law cited above, Illinois has a clearly mandated public policy towards protecting its citizens from all forms of violence, including violence that occurs in the workplace. Where the General Assembly has found a heightened prevalence of workplace violence or under-reporting of such violence it has

enacted specific legislation to protect its citizens, evidencing a public policy that discourages workplace violence and encourages reporting of violent incidents. Additionally, the Seventh Circuit has noted Illinois' tendency to favor protection of those employees who report incidents affecting the health or safety of individuals. *Long v. Commercial Carriers, Inc*, 57 F.3d 592, 596 (7th Cir. 1995). While the Illinois Supreme Court notes that an action that violates public policy "must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort [of retaliatory discharge] will be allowed," *Palmateer*, 421 N.E.2d at 878-79, the court finds these circumstances implicated where workplace violence is concerned. Allowing employers to discharge their employees because they reported an incident of workplace violence would directly contravene Illinois' efforts at promoting and protecting violence-free work environments, to the detriment of Illinois' working citizenry.

CONCLUSION

For the reasons stated above, the court makes a preliminary determination that, if the jury finds that Daoust was discharged in retaliation for reporting an incident of workplace violence, this would be a violation of clearly mandated public policy under Illinois law.

ENTER:

James F. Holderman

JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: January 11, 2007